OPINION
{¶ 1} Defendant-appellant Bradley L. Wilhelm appeals from his conviction and sentence in the Knox County Court of Common Pleas on three counts of intimidation in violation of R.C. 2921.03 (A) and one count of having weapons while under disability in violation of R.C. 2923.13. Plaintiff-appellee is the State of Ohio.
 {¶ 2} On September 2, 2002, a passing motorist telephoned 911 to report smoke from an unattended small fire near a vacant residence. Three trucks from the College Township Fire Department responded to the scene. The fire was observed to be fairly small debris smoldering in a ditch.
 {¶ 3} Firefighter Breece began dousing the debris with water. Firefighters Hieronymous, Samuell and Van Dyke stood by near the ditch line observing Firefighter Breece.
 {¶ 4} Firefighter Bill Baer watched the appellant enter a small tractor and engage the mower attachment. The appellant drove the tractor to a corner of the property away from the position of the firefighters. Upon reaching the corner appellant turned the tractor and proceeded in a path along the ditch line toward the firefighter's position. As the tractor came closer, Firefighters, Hieronymous, Samuell and Van Dyke jumped across the ditch to avoid being struck by the tractor. The tractor proceeded in a circular path around the yard. At no time did the tractor change speed, nor did appellant attempt to follow the firefighters. It is undisputed that appellant made no threatening remarks or bodily gestures. The firefighters were ordered off the property by Firefighter Baer who then radioed the Knox County Sheriff's office for assistance.
 {¶ 5} Officer Carpenter arrived on the scene and flagged the appellant to stop the tractor. The officer told appellant that the firefighters had reported he had tried to run them down with the tractor. According to Officer Carpenter, the appellant's response was "piss on them." A verbal confrontation ensued which concluded with appellant's arrest.
 {¶ 6} On September 10, 2002, in case number 02CR090072, the Knox County Grand Jury indicted appellant on three counts of assault, felonies of the fourth degree, in violation of R.C. 2903.13 (A). Appellant was served a copy of the indictment on September 18, 2002. On December 2, 2002, in case number 02CR120100, the Grand Jury indicted appellant on three counts of intimidation, felonies of the third degree in violation of R.C. 2921.03 (A). Both indictments arose from the September 2, 2002 incident. The December 2, 2002 indictment was served upon appellant on December 4, 2002.
 {¶ 7} On December 7, 2002, appellant was arrested while he was hunting on the family farm for having a weapon while under a disability in violation of R.C. 2923.13. The Knox County Grand Jury returned an indictment on this charge in case number 03CR01004 on January 6, 2003.
 {¶ 8} The indictments for assault and intimidation were consolidated for trial. A jury trial commenced in the Knox County Court of Common Pleas on February 19, 2003. After a two-day trial the jury ultimately returned verdicts of not guilty on the three counts of assault and guilty on the three counts of intimidation. Appellant filed a motion for a new trial, which was overruled via a judgment entry filed June 27, 2003.
 {¶ 9} On May 7, 2003, appellant entered a no-contest plea to one count of having a weapon while under a disability. The trial court subsequently found appellant guilty of that offense.
 {¶ 10} On July 18, 2003, the court held a sentencing hearing wherein the court sentenced appellant to a three year term of community control sanctions in each case. Appellant timely appealed. Appellant assigns seven errors to the trial court:
 {¶ 11} "The trial court erred by failing to grant defendant-appellant's motion of a judgment of acquittal.
 {¶ 12} "The trial court erred by omitting a relevant portion of the instruction on the offense of intimidation.
 {¶ 13} "The trial court erred by denying defendant-appellant's motion for new trial.
 {¶ 14} "The defendant was prejudicially denied effective assistance of counsel.
 {¶ 15} "Defendant-Appellant's convictions for intimidation were against the manifest weight of the evidence.
 {¶ 16} "Defendant-Appellant's conviction for having weapons while under disability was against the sufficiency of the evidence."
 I {¶ 17} Appellant argues the trial court should have sustained his motion for acquittal because the evidence was insufficient as a matter of law to permit the jury to convict him of the offense of intimidation as alleged in the indictment. Appellant argues the State did not prove beyond a reasonable doubt that the firefighters were in the performance of their duties at the time of the incident. Appellant argues the firefighters were simply observing as a colleague doused the smoldering debris. In essence, this was a false alarm.
 {¶ 18} A court should not sustain a motion for acquittal made pursuant to Crim. R. 29 if the evidence is such that reasonable minds could reach different conclusions as to whether each material element of the crime has been proven beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261. The State points out that the firefighters responded to an emergency call concerning smoke and a possible fire that was unattended. As the firefighters were volunteers they would be required to leave their private pursuits to respond to the call. Accordingly, the men and women were not on the property as mere casual observers. But rather, in their public service capacity. This is true whether or not they are holding a hose or driving a piece of equipment.
 {¶ 19} We find construing the evidence most favorably in favor of the prosecution, reasonable minds could come to different conclusions regarding whether appellant was guilty of intimidation. For this reason, the court properly submitted the case to the jury.
 {¶ 20} The first assignment of error is overruled.
 II {¶ 21} In his second assignment of error, appellant argues the trial court erred in not instructing the jury on the lesser offense of obstructing official business. He concedes he did not request such an instruction, nor object to its omission, so we must address this issue under the plain error doctrine pursuant to Crim. R. 52(B).
 {¶ 22} Rule 52(B) of the Ohio Rules of Criminal Procedure, the so-called "plain-error doctrine" applies to the failure of the court to properly instruct the jury on "all matters of law necessary for the information of the jury in giving its verdictà" pursuant to Section 2945.11 of the Ohio Revised Code. See State v. Williford,
(1990), 49 Ohio St.3d 247; State v. Gideons (1977), 52 Ohio App.2d 70;State v. Bridgeman (1977), 51 Ohio App.2d 105. The plain error doctrine is applied where, but for the error, the outcome of the trial would clearly have been otherwise. State v. Williford, supra,49 Ohio St.3d at 252 (citing State v. Cooperrider (1983), 4 Ohio St.3d 226, 227). The rule is applied to prevent manifest injustice. Id.
 {¶ 23} An offense may be a lesser included offense of another if: (1) the offense carries a lesser penalty; (2) the greater offense, as statutorily defined, can never be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem (1988), 40 Ohio St.3d 205, paragraph three of the syllabus. In determining whether the greater offense could ever be committed without committing the lesser as well, the court must examine the elements of the crimes in the abstract, and not undertake an analysis of the facts of a particular case. State v. Koss (1990), 49 Ohio St.3d 213,218.
 {¶ 24} The offense of the greater degree, intimidation, can be committed without the offense of the lesser degree, obstructing official business, also being committed. A person has committed the crime of intimidation when he knowingly and by either force or unlawful threat of harm to any person or property, attempts to influence, intimidate or hinder a public servant, party official, or witness in the discharge of the person's duty. R.C. 2921.03 (A) requires only an "attempt" and an "unlawful threat of harm." State v. Wilburn, Cuyahoga App. No. 82573, 2003-Ohio-6495; State v. Myers, Henry County App. No. 7-99-05; 2000-Ohio-1677; State v. Hicks (November 20, 1995), Richland App. No. 95CA13.
 {¶ 25} "For one to be convicted of obstructing official business, the defendant, acting with the purpose to prevent or delay the performance of any public official, must do an act which in fact hampers or impedes the official in performing his duties. R.C. 2921.31. Thus, according to the statute, even if the defendant possessed the requisite intent but his acts do not hamper or impede a public official in carrying out the duties, he cannot be found to have obstructed official business."Cuyahoga Falls v. Cox, (January 25, 1989), Summit App. No. 13644; Statev. Stephens (1978), 57 Ohio App.2d 229.
 {¶ 26} Consequently, under the second step in Deem obstructing official business is not a lesser included offense of intimidation. Statev. Kelly, Champaign App. No. 2001-CA-14, 2002-Ohio-2372. The trial court did not err when it did not instruct the jury on the elements of obstructing official business.
 {¶ 27} Appellant's second assignment of error is overruled.
 III {¶ 28} In his third assignment of error, appellant argues that the jury was not instructed on the definition of "unlawful threat of harm."
 {¶ 29} Appellant concedes that he neither requested the trial court give an instruction on this definition, nor did he object to its omission. Accordingly, this court is limited to determining whether the trial court committed plain error in failing to instruct the jury on the definition of "unlawful threat of harm." Crim. R. 52(B) provides that, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise. Id. at paragraph two of the syllabus.
 {¶ 30} Neither the Ohio Revised Code nor the Ohio Jury Instructions define "unlawful threat." In the absence of a statutory definition, R.C.1.42 directs the court to apply the word's usual, normal or ordinary meaning. State v. Scott (1982), 69 Ohio St.2d 439, 440; Eastman v. State
(1936), 131 Ohio St. 1, paragraph five of the syllabus. Clearly the concept of an "unlawful threat" is within the understanding of the ordinary person. The dictionary definition is sufficient to adequately instruct the jury on the definition of "unlawful." State v. Myers, Henry County App. No. 7-99-05, 2000-Ohio-1677. Accordingly, a specific instruction on the term "unlawful" would not have added anything new to the charge as given by the trial court. Appellant has not demonstrated that the result of the proceeding would have been different had a specific instruction on the definition of "unlawful" been given to the jury.
 {¶ 31} The trial court did not commit plain error when it failed to instruct the jury on the definition of unlawful of harm.
 {¶ 32} Appellant's third assignment of error is overruled.
 IV {¶ 33} In his fourth assignment of error appellant argues that the trial court erred when it failed to grant his motion for a new trial based upon newly discovered evidence.
 {¶ 34} "To warrant the granting of a motion for a new trial on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong probability that it will change the result of a new trial if granted; (2) has been discovered since the trial; (3) is such as could not in the exercise of due diligence have been discovered before the trial; (4) is material to the issues; (5) is not merely cumulative to former evidence; and (6) does not merely impeach or contradict the former evidence." State v. Petro (1947),148 Ohio St. 505, syllabus.
 {¶ 35} Appellant presents as newly discovered evidence the specifications for the tractor and the testimony of firefighter Breece taken from the subsequent trial of appellant's father.
 {¶ 36} The specifications for the tractor were submitted to establish that the speed of the tractor when mowing could not exceed 1.66 miles per hour. Appellant's father Alva Wilhelm testified at trial that the speed of the tractor was 3.4 miles per hour. (T. at 59). This evidence fails to meet the requirements of Petro, supra. Specifically, appellant gives no explanation as to the why, in the exercise of due diligence, this information could not have been discovered and presented at trial.
 {¶ 37} Concerning the testimony of firefighter Breece, appellant concedes that he neither asked for a continuance to secure his attendance at trial, nor proffered during the trial the substance of his testimony. However, appellant argues that firefighter Breece's testimony would establish that appellant made two passes along the ditch line before the three firefighters jumped out of the path of the tractor.
 {¶ 38} The issue before the jury in this case was whether appellant knowingly and by either force or threat of harm to any person or property attempted to influence, intimate or hinder the firefighters in the discharge of their duties. The jury heard from each of the three firefighters that they had to jump over the small ditch to avoid being hit by the tractor. (T. at 53; 62; 78 79). Firefighter Baer yelled at the firefighters to get out of the way of the oncoming tractor. (T. at 29). Appellant's father testified that the appellant was mowing at the time the firefighters arrived on the scene. (T. at 152). At trial, appellant's father testified as follows:
 {¶ 39} "A. He went and mowed down towards where they had this little fire truck parked, and he turned, and when he turned, the guy that went and showed them where to spray the water walked up on the road, went back down toward that little truck, and he stepped down in the ditch like he was going to step back up into the yard, and Brad stopped the tractor. The guy went back down in the ditch. Brad went on by. The guy comes back up out of the ditch and gets in the fire truck and backs it out into the road. And I don't know where he went after that." (T. at 153).
 {¶ 40} "The granting of a motion for a new trial upon the ground named [newly discovered evidence] is necessarily committed to the wise discretion of the court, and a court of error cannot reverse unless there has been a gross abuse of that discretion. And whether that discretion has been abused must be disclosed from the entire record." State v.Petro, supra, 148 Ohio St. at 507 and 508. (Quoting State v. Lopa
(1917), 96 Ohio St. 410, 411.)
 {¶ 41} Following a review of the record, we conclude that the trial court did not abuse its discretion as there is not a strong probability that the proffered testimony of firefighter Breece would change the outcome of a trial.
 {¶ 42} Appellant's fourth assignment of error is overruled.
 V {¶ 43} In his fifth assignment of error, appellant urges he was deprived of the effective assistance of counsel.
 {¶ 44} A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 506 U.S. 364,113 S.Ct. 838, 122 L. Ed 2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 45} In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley, 42 Ohio St.3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists that counsel's conduct fell within the wide range of reasonable, professional assistance. Id.
 {¶ 46} In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. This requires a showing that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Bradley, supra at syllabus paragraph three. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. It is with this framework in mind that we address the instance of alleged ineffectiveness of counsel raised by appellant in the instant case.
 {¶ 47} Appellant points to two issues in which he argues trial counsel was deficient. The first is failure to request a jury instruction on a lesser included offense. Appellant does not identify which lesser included offense he believes trial counsel was deficient in not requesting from the trial court.
 {¶ 48} Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel. State v. Carver (1995), 72 Ohio St.3d 545, 558; State v.Mosses, Richland App. 2001CA104, 2003-Ohio 5830. The failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel. State v.Clayton (1980), 62 Ohio St.2d 45; State v. Griffe (1995),74 Ohio St.3d 332, 333; State v. Mosses, supra.
 {¶ 49} Secondly, appellant argues trial counsel failed to object to the failure of the trial court to define "unlawful conduct" in its jury instructions. In light of our disposition of assignment of error number three, supra, defense counsel was not ineffective in failing to object to the trial court's instructions.
 {¶ 50} Appellant's fifth assignment of error is overruled.
 VI {¶ 51} In his sixth assignment of error appellant argues that his conviction for three counts of intimidation is against the manifest weight of the evidence.
 {¶ 52} Weight of the evidence concerns "inclination of the greateramount of credible evidence, offered in a trial, to support one side ofthe issue rather than the other." State v. Thompkins 78 Ohio St.3d 300,387 (emphasis in original). (Citations omitted). A judgment sustained by sufficient evidence may nevertheless be reversed as against the weight of the evidence. Id. The standard to be applied by the appellate court is as follows:
 {¶ 53} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the fact finder's resolution of the conflicting testimony. Tibbs,
[v. Florida 457 U.S. 31], at 42, 102 S.Ct. at 2218, 72 L. Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 1 720-21 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.") Id.
 {¶ 54} In this assignment of error, appellant contends the jury's verdict is against the manifest weight of the evidence because based upon the evidence the jury should have found that the firefighters were performing no duties at the time of the alleged offense. In other words, they were merely spectators standing and watching a colleague douse the small fire. We have reviewed the record of this matter and conclude the jury's verdict is not against the manifest weight of the evidence.
 {¶ 55} The following evidence in the record supports this conclusion. First, the volunteer firefighters were responding to a call concerning a fire. (T. 23; 51; 60; 77; 87). They were dressed in firefighting gear. (T. at 25; 55; 64; 79-80; 91). The firefighters arrived at the scene in vehicles used to fight fires. (Id. at 24; 52; 60; 80; 88). They left their homes and even college classes to respond to the emergency call. (T. at 24; 87-88). At the time the emergency call was reported, the firefighters did not know the size of the fire. (T. 83-84).
 {¶ 56} The above evidence is sufficient to indicate the firefighters were in the performance of their duties at the time of the incident. Questions concerning the weight of the evidence and credibility of the witnesses are the function of the trier of fact, see State v.DeHass (1967), 10 Ohio St.2d 230.
 {¶ 57} The jury did not lose its way in resolving conflicts in the evidence.
 {¶ 58} Appellant's sixth assignment of error is overruled.
 VII {¶ 59} In his seventh assignment of error, appellant challenges his conviction by the trial court on one count of having a weapon while under a disability.
 {¶ 60} Appellant was originally indicted for three counts of assault under Case No. 02CR090072 on September 10, 2002. He was subsequently arraigned in the Knox County Court of Common Pleas on September 20, 2002.
 {¶ 61} Appellant was served with the indictment alleging three counts of intimidation on December 4, 2002. There is no evidence in the record that appellant ever contacted any law enforcement authority to report possession of the firearm or voluntarily surrender the firearm before his arrest on December 7, 2002.
 {¶ 62} The appellant was arrested on the weapons charge on December 7, 2002.
 {¶ 63} Regardless of the final outcome of the indicted charge, the triggering mechanism for purposes of R.C. 2923.13 is whether the indictment is pending. State v. Taniguchi (1995), 74 Ohio St.3d 154. Accordingly, the trial court was correct in finding appellant guilty of this charge.
 {¶ 64} Appellant's seventh assignment of error is overruled.
 {¶ 65} For the foregoing reasons, the judgment of the Knox County Court of Common Pleas, is affirmed.
Wise J., and Boggins, J., concur.
 {¶ 65} For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Knox County, Ohio, is affirmed. Costs assessed to appellant.